UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20436-CR-GRAHAM

UNITED STATES OF AMERICA

v.

**CARLOS FLORES LOPEZ,**

    Defendant.

## MOTION FOR A NEW TRIAL

The defendant Carlos Flores Lopez hereby files this motion for new trial pursuant to Federal Rule of Criminal Procedure 33 and has grounds therefore which state:

1. The defendant was charged with an eight-count indictment alleging conspiracy to import and distribute cocaine as well as substantive count regarding the importation and attempted importation of cocaine and heroin.

2. On October 8, 2009 the jury returned a verdict of guilty on Count 6 of 8 criminal counts against the defendant.

3. Prior to the jury's verdict the defendant agreed to submit himself to a voice spectrographic analysis that was conducted by government Agent Ryan O'Neil Johnson of the DEA.

4. Agent O'Neil's voice analysis determined, in his opinion, that there was a more than 80 percent likelihood that the disputed voice on a drug conversation recording was that of the defendant.

5. In response to the government's desire to use this alleged scientific evidence during the case in chief the defendant filed a Motion In Limine To Exclude Spectrographic Voice Analysis.  [D.E. 295].

6. Based on the arguments in the motion the Court issued an order excluding the spectrographic voice analysis.  [D.E. 296].  However, the Court over defense objections, allowed Agent O'Neil to testify during the case in chief that he had listened to recordings of the defendant

for over ten hours and felt that after speaking with the defendant that the disputed voice sounded like the defendant Carlos Flores Lopez.

7.      The admission of this type of testimony unfairly prejudiced the defendant in violation of Federal Rule of Evidence 403 in that the admitted testimony of Agent O'Neil was unfairly prejudicial.  Further, the admission of such testimony violated Federal Rule of Evidence 701 by allowing an improper lay opinion to be admitted into evidence and because Agent O'Neil was a federal agent it gave the impression to the jury that the agent's opinion held more weight than the jury's opinion would be on the same issue.  Also, it restricted the nature and breadth and length of cross-examination that the defense could engage in because questions regarding how the agent was able to listen to the defendant's voice would only lead impermissable facts being revealed.  The fact that the defendant is incarcerated; that the defendant is a dangerous individual who cannot be released on bond by the Court; that the defendant must be of a criminal class in that he has had previous contact with law enforcement, and that Mr. Lopez must have a criminal past.  By allowing the Agent to testify in effect the defendant was denied his Sixth Amendment right of confrontation by having the cross examination of Agent O'Neil limited by the aforementioned factors.

## MEMORANDUM OF LAW

In the defendant's motion in limine the defense clearly established to the satisfaction of the Court that scientific voice analysis is basically junk science.  (See D.E. 295).  As such the Court agreed to exclude Agent O'Neil's testimony in regards to any efforts he did to come to what he called a "voice print" analysis.  However, the Court allowing Agent O'Neil to testify as an alleged lay witness opened up a Pandora's box of evidentiary problems that has necessitated the granting of this motion for a new trial.

Courts that have dealt with lay opinion testimony by agents and police officers generally have come up in the context of photo identification of suspects.  In *United States v. Pierce* 136 F.3d 770 (11th Circuit 1998), the 11th Circuit was faced with an alleged bank robber who during the robbery of the bank attempted to conceal his identity.  The *Pierce* court found that

there are cases where lay opinion identification testimony would be helpful to a jury where there would be some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than the jury. *Id*. at Page 771. The court reasoned that if the government could demonstrate that the testifying witness would be in a better position than the jury to give an opinion as to the resemblance of the defendant on the approximate date of the robbery in light of the fact that defendant may look differently at the time of trial, then such a lay opinion was permissible. *Id*. at Page 774 quoting *United States v. Borrelli*, 621 Fed. 2d 1092, 1095 (10th Cir. 19080).

However, in this case, Agent O'Neil testified on cross-examination that his listening to the defendant's voice and then making his own opinion as to similarity, is something that the jury could do just as well. That being the case the only thing that Office O'Neil's testimony did was to give greater weight to his opinion because of the fact that he was an agent. Other courts faced with agents giving lay opinion on the identity of a suspect have taken precautions in order to prevent the jury from surmising that the defendant was part of a criminal class by being contacted by agents prior to trial, or having a criminal record. These courts prevent the agent or officer from revealing to the jury that they were in fact law enforcement. Such a situation occurred in *United States v. Farnsworth*, 729 Fed. 2d 1158 (8th Cir. 1984). *Farnsworth* was another bank robbery case where at the time of the robbery the alleged robber was wearing a scarf over his face and at the time of trial the accused defendant had grown a full beard. The court allowed parole officers who had frequent contacts with the defendant to testify and give a lay opinion from photographs of the bank robbery as to whether or not the defendant was in fact the bank robber. However the court was very careful to not reveal the parole officers' status nor the defendant's prior record. The court allowed the parole officer in that case to testify, however it strongly cautioned that "because of the constraints on cross-examination, however, we do not encourage the use of lay opinion identify by police or parole officers. They should be used only when no other adequate identification testimony is available to the prosecution. *Id*. at Page 1161.

However compare the results in United States v. Calhoun, 544 Fed. 2d 29 (6th Cir. 1976). In Calhoun, the court held the trial court abused its discretion admitting a parole officer's identification of the defendant in the surveillance photograph because his broad assertion could not be tempered or probed by cross-examination. Id. at 295. The Calhoun court considered the relevant lines of inquiry on cross-examination cut off by the danger that probing into the witness' possible bias would reveal to the jury that the defendant was on parole. The court did not reach the Constitutional right to confrontation issue, but held that the mention of such testimony violated Rule 701 because the natural antidote of cross-examination was necessary to temper the expansive scope of that rule. It further concluded that the evidence violated Federal Rule of Evidence 403 because the danger of unfair prejudice outweighed its probative effect. *Id.*

The *Calhoun* case is well reasoned. It points out the reality that placing a lay officer on the stand to give an opinion regarding identification of the defendant is fraught with peril. The defendant is placed in a position where full blown cross-examination cannot take place because to do so would reveal impermissible items that a jury should not hear because it would affect the defendant's ability to have a fair trial. In the case at bar, full blown cross-examination of Agent O'Neil would have revealed that the defendant was incarcerated; in the eyes of the jury some type of criminal; that he more than likely had a criminal past for an agent to have had extensive conversations with him; that he was a highly suspected individual by federal agents. All of these things and more present problems with Federal Rule of Evidence 701 and 403 and the Confrontation Clause.

The Confrontation Clause is implicated because of the curtailment of the defendant's right to have full blown cross-examination for the reasons articulated above. In the case at bar, the government had ample opportunity to use other means to identify the defendant. The government called Alberto Espinosa a confidential informant who claims to have identified the defendant after a meeting discussing a drug deal with him. This identification was done through the presentation of a single photograph. Also, the defendant had a cooperating witness, John Lopez, who was a good friend of the defendant and testified that in fact the disputed voice was

that of Mr. Lopez. In light of the government having other evidence of identity it was unfairly prejudicial, a violation of the confrontation clause, and an improper lay opinion to allow an officer on the stand to state his opinion on the identity of the defendant in listening to his voice.

> Identification testimony from law enforcement or corrections personnel may increase the possibility of prejudice to the defendant either by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed to the jury, or by effectively constraining defense counsel's ability to undermine the basis for the witness's identification on cross-examination, if the witness's occupation is to remain concealed. *Pierce* at 775

There is no question that the issue of identity was a hotly contested issue in this case. The juror's questioning was squarely on this issue of identity. One of the juror's questions specifically stated that the jury was having trouble on the issue of identity and did not know what to do. That being the case it cannot be said that adding Agent O'Neil's testimony was not the straw that broke the camel's back or pitched the case in the favor of the government by providing that additional identity evidence necessary for them to come to a conclusion that the disputed voice was that of defendant. Thus it cannot be argued that the testimony of Agent O'Neil's testimony was harmless.

It is necessary to prevent manifest unfairness in this matter that this court grant this motion and allow Carlos Flores Lopez to have a new trial without the disputed tainted evidence of Agent O'Neil.

**WHEREFORE**, the defendant respectfully requests that this motion is granted and a new trial scheduled by the court.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have filed this motion electronically by using CM/ECF this 20th day of October, 2009.

s/Gregory A. Samms
Gregory A. Samms,
225 Alcazar Avenue
Coral Gables, FL 33134
(305)-443-6163 phone
(786)-513-3191 tax
sammslaw@gmail.com